ORIGINAL

In The United States District Court
For The District Of Delaware

Kenneth M. Smith,
    Petitioner,

v.

Thomas L. Carroll, Warden, and
M. Jane Brady, Attorney General
of the State of Delaware,
    Respondents.

Civil Action No. _____/_____

05-262


FILED
MAY - 3 2005
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

**Petitioner's Memorandum of Law and Supporting Facts**

The petitioner Kenneth M. Smith, pro se, now moves this Honorable Court respectfully, pursuant to the federal civil procedural Rule 2, and the governing Section of 28 U.S.C. §2254, for Habeas Corpus relief. In support thereof, the following is offered:

1. Petitioner was arrested in the afternoon of December 22, 1997, for shoplifting from the Value City department store at 4U Naamans Rd, Claymont Delaware.

2. On the affidavit filed by dect. Vincent Fiscella of the Delaware State Police, troop 2, did charge the petitioner with two counts of Robbery. As to 1N98011162R2 pursuant to 11 Del. C. §832(a)(2)(Robbery 1st). As to 1N98010594 pursuant to 11 Del. C. §831 (Robbery 2nd).

3. On December 31, 1997, the justice for the Court of Common Pleas reduced the charges to one count of (Shoplifting).

4. On January 20, 1998, the office of the Attorney General conviened a grand jury and indicted the petitioner of one count of (Robbery 1st) as to 1N98011162R2 pursuant to 11 Del. C. §832(a)(2).

5. Following a two-day jury trial, the petitioner was found guilty of one count of (Robbery 1st) pursuant to 11 Del.C. §832(a)(2), on June 3, 1998.

6. The Attorney General office filed to have the petitioner declared an habitual offender, pursuant to 11 Del.C. §4214 (a), on June 4, 1998.

7. Two-days prior to the petitioner's sentencing, the Attorney General office amended its motion for an habitual offender, pursuant to 11 Del.C. §4214(b), on August 5, 1998.

8. On August 7, 1998, the petitioner was declared an habitual offender, pursuant to 11 Del.C. §4214(b), and sentenced to life in prison without parole.

9. The petitioner filed a timely appeal rising two grounds for relief: (1) trial court failed to conduct a prayer conference depriving him of a fair trial, and (2) trial court committed plain error in the instruction of the jury on the elements for (Robbery 1st). The State filed it answering brief pursuant to Supreme Court Rule 25(a). On September 7, 1999, the Supreme Court of Delaware affirmed the petitioners conviction. See Smith v. State, Del.Supr., 738 A.2d 239, 1999 WL 734717 (1999). Order attached, Exhibit (A).

10. On June 14, 2000, the petitioner filed in the Superior Court of Delaware his first post conviction motion, pursuant to Super.Ct. Rule 61. The petitioner raised seven grounds for relief: (1) violation of the confrontation clause during trial; (2) insufficient evidence to support a conviction of (Robbery 1st); (3) improper jury instructions enhancing the charge; (4) prosecutioner misconduct; (5) abuse of trial court in sentencing; (6) improper and prejudicial closing arguments by defense counsel; and (7) ineffective assistance

2

of counsel at sentencing.

11. On December 20, 2000, the Supreme Court of Delaware affirmed his conviction pursuant to Supreme Court Rule 25(a). See Smith v. State, 2000 WL 1887933 (Del). Order attached, exhibit (b).

12. On April 5, 2004, the petitioner filed in the Superior Court of Delaware his second post conviction, pursuant to Super. Ct. Rule 61.

13. On April 16, 2004, the Superior Court denied the petitioner's post conviction motion. And the petitioner timely appealed to the Supreme Court. The court subsequently denied the petitioner relief. See Smith v. State, 2004 WL 1551531 (Del. Supr.). Order attached, exhibit (c).

14. The petitioner appealed to the Supreme Court of Delaware and was denied relief. Order attached, exhibit (d).

2

## Procedural History

Under Superior Court Criminal Rule 61 claims may not proceed where there exist a procedural bar. See Younger v. State, 580 A.2d 552, 554 (Del. Supr. 1990) (citing Harris v. Reed, 489 U.S. 255, 265 (1989). As the result of Superior Court Criminal Rule 61, the petitioner is alleged procedurally barred pursuant to 61(i)(1). However, it is clearly established under Delaware law that this bar is not absolute to post conviction remedies filed after three years. See Boyer v. State, 562 A.2d 1186 (Del. Supr. 1989); Bailey v. State, 588 A.2d at 1129 (Del. Supr. 1991). Thus under Rule 61(i)(5), the petitioner argues both that he has a colorable claim and that if left unattended it would be a miscarriage of justice, undermines the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction and constitutional violation created a new rule in law that errods the protection of his or her right pursuant to the state and federal Ex Post Facto Clause of the constitutions. See Bailey v. State, 588 A.2d 1121 (Del. Supr. 1991); Weaver v. Graham, 450 U.24, 29 (1981) (new rule makes it an "retroactive right" when case announces new rule that breaks new ground or imposes a new obligation on the state or federal government) (emphasis on original).

Likewise, the Delaware Supreme Court has also decided that a defendant can meet the burden of proof of establishing a "colorable claim" of injustice under the narrow application of the "fundamental fairness" exception found in Rule 61(i)(5). See State v. Kirk, ID. No. 9612002650, Order Ableman, J., Feb 26, 2004, p. 16 (Del. Super.). Based on the facts presented here and its case law. The petitioner argues that due to the "new rule" announced through the Delaware Supreme Court decisions in Walton v. State, 821 A.2d 871 (Del. Supr. 2003). The Delaware Court system

4.

has created a manifested injustice by denying the petitioner the "retroactive right" as provided by the "new rule" for relief created by Walton. Wherefore, the petitioner seeks the review of this Court as provided for by 28 U.S.C. § 2254(b)(1),(ii), and (d)(2).

## Statement Of Facts

At or around 6:30 pm on the evening of Dec 22, 1997, the petitioner was arrested in the Value City department store's parking lot, located at 401 Naamans Rd, Claymont Delaware. The petitioner's arrest was percepercated by his return to the store, following an earlier shoplifting incident and alleged confrontation with the store's security person (John Giordano). Who alleges that upon trying to confront him durning the first incident. The petitioner turned towards him and stated "back off". Although trial testimony by Mr. Giordano contradicts the evidence, he allegedly beleived that the petitioner had a gun because of the positioning of his right hand underneath the items that he was attempting to shoplift at that time. See Affidavit Of Probable Cause and attached exhibits marked (A) and (b).

## Ground One

(A) Vacation Of Conviction For First Degree Robbery Pursuant To 11 Del.C.§ 832(a)(2) Is Warranted By The Governments New Rule. In Law As Applied In Walton.

The state's case is based soley on the interpretation of the word "display". In 1975, the Delaware Supreme Court interpreted Delaware's Robbery First Degree statute as applying whenever a criminal intimidates a victim by the manifesting of the presence of deadly weapon in such a way that it is perceived by any of the victim's senses. See Smallwood v. State, 346 A.2d 164 (Del.Supr. 1975).

5

Delaware has been consistent in maintaining the philosophy of their interpretation of what constitutes "display" for more than 26 years. See Harrigan v. State, 447 A.2d 1191 (Del. Supr. 1982) (defendant had one hand inside his coat and made a verbal threat to shoot the victims); Mercado v. State, 515 A.2d 398 (Del. Supr. 1986) (defendant tapped a bulge in his waistline, which victim perceived to be a handgun, and made a verbal threat); Deshields v. State, 544 A.2d 265 (Del. Supr. 1988) (defendant reached into his coat pocket as if he was reaching for a gun while threatening his victims). Arguendo, Delaware case law reveals that its rational has always been based upon the principles of a substantiation of physical or a overt manifestation of a deadly weapon for the purpose of defining "display". Yet, Delaware seems to hold the view as well that absent a substantiation of physical or overt manifestation. Robbery First Degree can as well be substained solely on an objective view alone. See Williams v. State, 494 A.2d 1237 (Del. Supr. 1985) (defendant had his hands clasped together pointed towards the victim admonishing with a verbal threat); Lawrence v. State, 790 A.2d 476 (Del. Supr. 2000) (displays, includes a defendant's act of wrapping cloth around his hand so as appear to be hiding a gun, where the victim reasonably apprehended that defendant was armed).

In upholding the basis for the petitioner's conviction on the above principles of law. The Superior Court used the findings from Word v. State, 801 A.2d 927 (Del. Supr. 2002); McKamey v. State, 2003 WL 22852614 (Del. Super. Ct.). However, because the petitioner did not request simply that his conviction be reduced to Second Degree. His request pursuant to Rule 61 to vacate his conviction for insufficient evidence predicated for the requirements of §832.

19 A. He did say he feared for his safety. He
20. believed the subject had a gun and it was in his
21. waistband. He feared for his safety. That's why he
22. walked away.

The court however must note that corporal Peiser's trial testimony differs from that told to him by Mr. Giorando. According to detective Fiscella, who under oath swore out an affidavit in the Justice Of The Peace Court, that information was given to him by Mr. Giorando, that he believed the petitioner to be armed soley on the premises of a single remark "Back off" and his alleged motioning to his coat (as if he was concealling something). See affidavit at asteriek*, attached as exhibit (E).

(trans p.p. 22)

11. A. I walked back into the store and went to the
12. front customer service area and d. led 911.
13. Q. Why did you dial 911 at that point?
14. A. Because Delaware State Police is dispatched
15. through 911.
16. Q. Okay.
17. And what did you want to report to them?
18. A. The incident that happened, a shoplifting and
19. a person acted as though he had a weapon.

---

1: Vincent Fiscella, who become the investigating officer after the apprehension of the petitioner after a second incident later that day at Value City.

7

What becomes apparent in this case is the obvious, corporal: Preiser's testimony conflicts with Mr. Giorando and detective: Fiscella. Nevertheless, it is the crux of the state's case, notwithstanding the petitioner's remark to Mr. Giorando of "Back Off". However, it can not be given substantial weight under sufficiency of evidence.

Denying the petitioner of the relief requested the state court's have held that its decisions are based on the testimony of Mr. Giorando at trial on June 2, 1998, at p.p's. 53-54. Yet they maintain that Mr. Giorando did'nt see anything to have been a weapon. See exhibit (c), at p.p. 9 as underlined. The state court's hold that under Smallwood, the petitioner remark of "Back Off" intimidated his victim by manifesting the presence of a deadly weapon soley as preceived through the victims senses, even if the manifestation was not obvious to the observer or consisted of a verbal treat. See exhibit (c), at Slp N.*10; at N. 7. However, the court's have given no rational for detective: Fiscella's testimony which no doubt made Mr. Giorando's testimony believable, even though there is no proof that he was ever told that the petitioner appeared to have what he believed to be a weapon. This is the picture that the state was allowed to paint to the jury, and in doing so established the enhanced factors for (Robbery 1st). See Deshields v. State, 706 A.2d 507 (Del.Supr. 1998); and Muhammad v. State, 829 A.2d 137-39 (Del.Supr. 2003).

The court's findings are disengenerious, legally faulty and disproportionate to both the letter and the spirit of the law. In every criminal conviction, the government must prove its case beyond reason doubt. Jackson v. Virginia, 443 U.S. 307, 319

8

(1979); Davis v. State, 453 A.2d 802, 803 (1982)(per curiam); and Williams v. State, 539 A.2d 164, 168 & n.4 (1982)(En Banc). What is most unusuall about this case is the fact that just a few hours after his first incident with the petitioner, Mr. Giorando, engages the petitioner on a second occasion.

(trans p.p. 20).

9. Q. When you saw my client allegedly later on
10. where he was apprehended, where was he at that point?
11. A. At which point?
12. Q. The second time that you saw my client and
13. apprehended him.
14. A. He was outside the front entrance of the mall
15. in the parking lot.
16. Q. So when you have referred previously to a
17. parking lot, you're talking about the second time that
18. you saw him allegedly that day?
19. A. Yes.

Adding more doubt to the belief that Mr. Giorando's alleged fear is what accured once the petitioner was observered the second time.

(trans p.p. 22)

14. Q. And when you apprehended him, how many people
15. were with you when you apprehended him?
16. A. Myself and one other person.
17. Q. Who was the other person, please?
18. A. Another detective for Value City
19. Q. And who was that, please?
20. A. Detective Rogers.

9

The court should note for the record, detective: Rogers was not working during the first incident, and apparently had just begin his shift. While the record does not indicate whether or not detective: Roger knew of the earlier incident with Mr. Giorando and the petitioner, because there is no testimony from detective: Rogers. However, reasonable intelligence says that he was not aware of the earlier incident. No intelligent person knowingly goes out of his way to apprehend a knowingly armed person under these circumstances. It goes against a security guards training, store policy, logic, and puts others at a risk.

The <u>Walton</u> court made clear that victims accounts of being merely threaten and appearing to motion as if he or she is armed by placing hands in the pocket, is not evidence of "appeared to be a deadly weapon". Id. 821 A.2d at 873-74. The court adopted a two prong analysis to "display" pursuant to 11 Del. C. §832(a)(2). One, there must be a subjective belief that the assailant has a weapon. See <u>Smallwood</u>, 396 A.2d at 166. Two, the objective manifestation of a weapon. See <u>Desheilds</u>, 706 A.2d at 507. In evaluating the premises of the lower court's. This conviction does not demonstrate an act of (Robbery 1st), because the lack of an objective physical or overt manifestation. The conviction hinges on the petitioner's alleged remark "Back off" as a display or a threat of a deadly weapon. See <u>Walton</u>, 821 A.2d at 877. In so ruling, the <u>Walton</u> court said. If it was to use the rational of sensitivity from each case from victims of a verbal threat as the determining factor of whether the offense evaluates from (Second Degree Robbery to First Degree Robbery). In a nut-shell

(Robbery 2nd) could not exist in reality.

The law of the land is well-settled around the country on the issue of what constitutes (Robbery 1st), and it requires more than the threat of the use of force. See Hughes v. State, 185 Ga.App. 40, 365 S.E.2d 336-37 (1987); People v. Parker, 417 Mich. 556, 339 N.W.2d 455, 459 (1983)(the fact finder must demonstrate that the defendant was "armed with an article that leads the victim to believe the defendant possessed a deadly weapon"); State v. Fortune, 608 So. 2d 148-49 (La. 1992)(1st degree robbery statute "requires the State to prove that the offender induced a subjective belief in the victim's belief was objectively reasonable under the circumstances"); People v. Lopez, 73 N.Y.2d 214, 538 N.Y.S.2d 788, 535 N.E.2d 1328, 1332 (1998)(1st degree robbery statute requires the defendant by his actions, consciously manifest the presence of an object to the victim in which a way that the victim reasonably believed that the defendant has a gun).

The petitioner contends that the lower court's proposition based on its recent ruling in Word v. State, 801 A.2d 927 (Del.Supr.2002); State v. McKamey, 692 A.2d ___ (Del.Supr.2003); and Walton v. State, 821 A.2d 871 (Del.Supr.2003). The court's can not nullify the effects that these case have on the petitioner's argument. There is no aggrevating facts or factors in the case to elevate the petitioner's crime to nothing more than shoplifting. See Dawson v. State, 2004 WL 838858 (Del.Super.Ct.Apr.12, 2004)(the term "force" means "physical force" as defined pursuant to 11 Del.C. § 222 (22). As the essential element of (Robbery 1st).

11

There has been no show of "force" used in this case either directly or indirectly. A person is guilty of shoplifting if while in a mercantile establishment in which goods, wares or merchandise are displayed for sale, the person:

(3) Conceals any such goods, wares or merchandise with like intent—

(b) Any person wilfully concealing unpurchased merchandise of any store or other mercantile establishment, shall be presumed to have so concealed such merchandise with the intention of converting same to the person's own use without paying the purchase price thereof within the meaning of subsection (A) of this section, and finding of such merchandise concealed upon the person or among the belongings of such person, outside of such store or other mercantile establishment, shall be presumptive evidence of intentional concealment; and if such person conceals or causes to be concealed such merchandise upon the person or among the belongings of another, the intentional concealment on the part of the person so concealing such merchandise. 11 Del. C. §840 (a)(3)(b)......

Moreover, shoplifting can only be considered a class G felony when the goods, ware or merchandise shoplifted are of the value of $1,000 or more, or when the goods, wares or merchandise shoplifted are from 3 or more separate mercantile establishments and wares shoplifted in the same or continuing course of conduct and the aggregate value of goods is $1,000 or more. When the goods, wares or merchandise shoplifted are of the value of less then $1,000, it is a class A Misdemeanor. See affidavit, exhibit (E). Detective Fiscella, notes that the value of the items taken was

totaled at $150.00 dollars, Although indictments cure all errors made by presentation of information. Nonetheless, the petitioner contends that had detective: Fiscella's affidavit been made in good faith, the charges of robbery probably would'nt have never accured. The grand jury was never aware that the state was presenting to it conjecture and not facts based on second hand knowledge. In fact it was not until trial that the conduct preformed by detective: Fiscella in obtaining his arrest warrant on the petitioner became known. Detective: Fiscella did not actively take part in the petitioner's apperhension, or actively investigated the case.

(trans p.p. 58).

7. Q. When you wrote in your affidavit, that's what
8. you're talking about, the outside area that by your
9. own definition you consider as parking lot?
10. A. Yes.
11. Q. You were'nt being specific as to whether its
12. the stairs part, the sidewalk part, or whatever?
13. A. No. At that time I did not have the
14. supplement report from Corporal Priser, just my
15. synopsis that I got from Corporal Priser verbally, and
16. then in my interview of the victim.

(A). Detective: Fiscella's conduct can not be overlooked. It alone was what the state presented to the grand jury. Whether or not the deputy state attorney knew of the relevant facts that actually surrounded the petitioner's arrest. Makes this act more egregious. Detective: Fiscella, found himself without probable cause for an arrest. And in fact testified to as much.

13

(trans p.p. 58)
17. Q. The second incident in which the defendant
18. Smith was actually apprehended, you did not arrest him
19. for any criminal charges in relation to that?
20. A. I did not.
21. Q. You did not feel the need to collect any
22. evidence in regard to that?
23. A. No, sir.

Add this fact along with the chain of events that surrounds what lead to detective: Fiscella's involvement the second time, is simple. Although it may be said that the petitioner may have had the intentions of shoplifting from Value City again. Two things are certain from the facts, thus far. One, the petitioner never made it back into the store. That's why there isn't any vedio tape of the second incident, and evidence of the first incident.

(trans p.p. 24)
13. Q. And did you see him wearing this when he came
14. in?
15. A. No, he was wearing the same jacket he wore
16. earlier.
17. Q. Is there a vedio of that?
18. A. No, there's not.

(trans p.p. 26)
14. A. He was outside the front enterance of the mall
15. in the parking lot.

(B). Further proof of this argument is made by detective: Fiscella's decision to not charge the petitioner of any crime from which

14

he was apprehended just after allegedly taken another Perry Ellis jacket. No jacket was confiscated or ever observed having been in the possession of the evidence. Despite the fact that Mr. Giorando testifying that he secured this jacket as evidence in the store's vault.

(trans p.p. 24).

19. Q. And where did that jacket end up? +
20. A. Which one?
21. Q. The jacket that you say you had the second
22. time when you apprehended him.
23. A. It was put into evidence at Value City.

(C). No evidence was produced by the state, even though it solicted testimony at trial to substantiate that, if not a trial. There existed a jacket at some point of the petitioner having had indeed taken when he appeared at Value City the second time.

(trans p.p. 59)

1. Q. Have you, after Mr. Facciolo asked the
2. question this morning, attempting to check with Value City
3. to see if they still have the coat that he was
4. caught with at that time?
5. A. I have, sir.
6. Q. Have you had any luck?
7. A. No, sir, I have not.
8. Q. Okay. Why not?
9. A. The loss prevention manager is unavailable at
10. this time. He has my pager number and will contact me
11. when he comes in.

Detective Fiscella's testimony suggest that it was known to him that no evidence existed.

15

(D) The state's solicitation of the ambigious evidence at the least, violated the rule of evidence, Rule 404(b). See Pope v. State, 632 A.2d 73 (Del.Supr.,1993) (Rule 404(b) mandates that evidence of uncharged misconduct be analyzed first, vis-a-vis the listed exceptions). By enter this testimony of the uncharged misconduct prejudiced the petitioner of a fair trial. Moreover, the state violated the petitioner's due process, soliciting this testimony absent the evidence. See Deberry v. State, 457 A.2d at 754 (Del.Supr,1983) (the state, including its police agencies, is obligated to preserve evidence which is material to a defendant's guilt or innocence as a matter of federal and state due process). The state may not argue that, the argument is without merit. The state's case was made on the inferrence of all of the evidence introduced at trial. Had not this evidence been important, the state would not have made a case of it. Here alone merits the reversal and vacation of his conviction for (Robbery 1st). Both being plain errors.

In addition, contrary to the state court's rulings in his post conviction under Walton can not be maintained, because the relief requested is (1) filed after the amended statute 11 Del.C. §832(a)(2), and (2) that it seeks total vendication of the charge of (Robbery 1st) and not a reduction of conviction and sentencing to (Robbery 2nd) as sought in Word and McKamey. Indeed, Walton nullified §832(a)(2) in part, and subsequent enactment of the amendment constitutes a "new law". Denying the petitioner relief violates the Ex Post Facto Clause of both the federal and state constitutions. See Collins v. Youngblood, 497 U.S. 37, 41 (1990). It further puts the petitioner at disadvantage in its substantive change, by the application of

the "new law". The change in the statute is niether cosmetic or purely procedural. But changes or broadens the scope of §832 (a)(2), and changes the degree of punishment involved with the offense, by changing the construction of elements that mandates the crime alleged. The "new law" does not inherent the same form and substantive meaning of the law was in effect at the time of his criminal act. See State v. Cohen, 604 A.2d 846, 853 (Del. Supr. 1992); Dobbert v. Florida, 432 U.S. 282, 298 (1977); Hopt v. Utah, 110 U.S. 574, 590 (1884); and Weaver v. Gresham, 450 U.S. 24, 29 (1981).

### Ground Two

**A Conviction For Robbery In The Second Degree Is Without Merit Pursuant To 11 Del. C. §831**

The petitioner contends that upon the inducement of the facts found under ground one for insufficiency of evidence for (Robbery 1st). The argument holds true here pursuant to 11 Del. C. §831 as maintained in pertinent part for the "use of force" as required. The state has failed to prove its burden of proof beyond reasonable doubt of the element of the crime charged. See In re Winship, 397 U.S. 358, 364 (1970); Fiore v. White, 531 U.S. 225, 228-29 (2001); and Carter v. Neal, 910 F. Supp. 143, 151 (D. Del. 1995). Compare to Male v. State, 812 A.2d 224 (Del. Supr., 2002).

### Ground Three

**Trial Court Committed Abuse Of Discretion Violating Brady By Introducing Video Tape Of Store Surveillance.**

In this instant case, the state introduce a tape vedio of the store surveillance which held no relevance to

the petitioner guilt of the crime charged violating rules of evidence. While the tape shows the petitioner in the store, it did not show the petitioner participating in a crime. The state's sole purpose for the introduction of this evidence was to enhance its chief witness, Mr. Giorando's testimony without any relevance. See transcript of vediotape demonstration attached N's. 31-33.

Under Delaware Rule of Evidence, Rule 401. The trial court was required to examine the purpose for which the evidence is offered; that purpose must, in turn, accommodate the concepts of materiality, i.e. be of consequence to the action, and probative value, i.e. advance the likelihood of the fact asserted. See Farmer v. State, Del.Supr., 698 A.2d 946 (1997). The vediotape in this not only did not depict the petitioner in the act charged, but not in any act. See McKinney v. State, Del.Supr., 466 A.2d 356 (1983); D.R.E. 402. Likewise, D.R.E. 404(b) specifies that evidence of other crimes is admissible where it circumstantially identifies defendant with the crime for which the defendant is being tried. See Dutton v. State, Del.Supr., 452 A.2d 127 (1982). The state offered nothing and use of the evidence outweighed the use of its probative value, and were used to confused the jurors. See Pope v. State, Del.Supr., 632 A.2d 73 (1993).

By and through the above argument, the trial court's abuse of discretion created a plain error and can not be cured other than through vacating this conviction.

## Ground Four

The Petitioner Is Entitled To Relief Pursuant To The Ex Post Facto Clause Under Both The Federal And State Constitutions By The Creation Of A "New Law" Established In Walton Under Delaware's Habitual Offenders Act.

Arguendo, through the process of elimination. The petitioner's conviction may not stand by the prerequisites set by the "new law" in Walton v. State, Del. Supr., 821 A.2d at 877 n.5 (2003) as an habitual offender. As found by the Walton court, the substantial change created by the elements is prohibited under double jeopardy for sentencing of 11 Del.C.§4214(b). This court's jurisdiction rest in Coleman v. Thompson, 501 U.S. 722, 750 (1991); and Wainwright v. Sykes, 433 U.S. 72 (1977). The action of the state deprives the petitioner of state and federal constitutional protection of due process. See Younger v. State, 580 A.2d 552, 555 (Del. Supr. 1990) (citing Teague v. Lane, 489 U.S. 288, 297-99 (1989). Moreover, the court should apply the rule of "extra-ordinary circumstances to this case as a matter of law. See Kirk v. State, ID. No. 9612002625 (Order, Ableman, J., Feb. 26, 2004, p.p. 16 (Del. Super.); Super. Ct. Crim. R. 61(i)(5); and Murray v. Carrier, 477 U.S. at 496 (1986).

Date: April 30, 2005

Kenneth Smith M
Kenneth M. Smith #00193966
Delaware Correctional Center
Smyrna, Delaware 19977

<u>Certificate of Service</u>

I, Kenneth M. Smith, hereby certify that I have served true and correct copies of the attached Memorandum of Law and Supporting Fact Pursuant to Habeas Corpus Relief upon the following parties:

To: The Clerk of the Clerk
United States District Court
of the State of Delaware
844 N. King Street
Lockerbox 19
Wilmington, Delaware 19801

To: Paul R. Wallace, Esq.
Deputy Attorney General
Department of Justice
Carvel State Building
820 N. French Street
Wilmington, Delaware 19801

By Placing Same In Sealed Envelopes and depositing same in the United States Mail at the Delaware Correctional Center, Smyrna, Delaware 19977.

On this 30th, day of April, 2005.

Kenneth Smith M