IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

KENNETH M. SMITH,            )
                             )
        Petitioner,          )
                             )
    v.                       )  Civ. No. 05-262-SLR
                             )
THOMAS CARROLL,              )
Warden, and CARL C.          )
DANBERG, Attorney            )
General for the State        )
of Delaware,                 )
                             )
        Respondents.         )

Kenneth M. Smith.  Pro se petitioner.

Gregory E. Smith, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for respondents.

**MEMORANDUM OPINION**

Dated: July 25, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

Currently before the court is petitioner Kenneth M. Smith's ("petitioner") application for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. (D.I. 1) He is currently incarcerated in the Delaware Correctional Center in Smyrna, Delaware. For the reasons that follow, the court will dismiss petitioner's § 2254 application.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On December 22, 1998, Value City Department Store detective John Giordano observed petitioner remove two jackets from the rack and leave the store without paying for them. Giordano followed petitioner outside the store and said "excuse me," to which petitioner immediately turned around, motioned as if he had a gun in his pocket, and said, "back off." Giordano, believing petitioner had a gun, returned to the store and called the police. Several hours later, petitioner returned to the store and Giordano observed petitioner shoplifting again. Giordano and another store detective approached petitioner from behind, grabbed his arms, and placed him in handcuffs.

On June 4, 1998, a Delaware Superior Court jury convicted petitioner of first degree robbery in violation of Del. Code Ann. tit 11, § 832(a)(2). The Superior Court sentenced petitioner as an habitual offender to a term of natural life at Level V

1

incarceration. See Smith v. State, 738 A.2d 239 (Table), 1999 WL 734717 (Del. Sept. 7, 1999).

Petitioner appealed to the Delaware Supreme Court, arguing that his right to due process was violated because: (1) the Superior Court failed to hold a prayer conference; (2) the jury instruction contained an impermissible presumption; and (3) the jury instruction on the lesser included offense of shoplifting indicated that the offense was a misdemeanor. The Delaware Supreme Court rejected petitioner's claims and affirmed his conviction and sentence on September 7, 1999. Id.

On June 14, 2000, petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), arguing that: (1) petitioner's right to confront witnesses was violated because only one store security officer testified at trial; (2) the Superior Court abused its discretion in denying petitioner's motion for acquittal based on insufficient evidence; (3) the Superior Court abused its discretion in admitting into evidence the security videotape without redacting portions that were allegedly inaccurate, inflammatory, and irrelevant; (4) the prosecutor engaged in misconduct by asking questions that distorted the content of the videotape; (5) the Superior Court erred in sentencing petitioner as an habitual offender; and (6) two allegations that trial counsel provided ineffective assistance.

State v. Smith, 2000 WL 33726919 (Del. Super. Ct. July 14, 2000). The Superior Court denied the Rule 61 motion after determining that the claims alleging ineffective assistance of counsel were meritless and the remaining claims were procedurally barred by Rule 61(i)(3) as defaulted or by Rule 61(i)(4) as previously adjudicated. Id. Petitioner appealed the Superior Court's decision, raising seven grounds for relief: (1) the prosecutor's failure to call one of the two store security guards as a witness violated the confrontation clause; (2) there was insufficient evidence to support his conviction; (3) the Superior Court gave improper jury instructions; (4) the prosecutor engaged in misconduct; (5) he was illegally sentenced as an habitual offender; (6) trial counsel provided ineffective assistance during the closing argument; and (7) trial counsel provided ineffective assistance during sentencing. Smith v. State, 2000 WL 1887933 (Del. Dec. 20, 2000). The Delaware Supreme Court affirmed the Superior Court's decision on December 20, 2000. Id.

Petitioner filed a motion for modification of sentence in April 2004, which the Superior Court denied because it was filed more than 90 days after the imposition of sentence and because the post-conviction relief sought by petitioner could not be granted by a motion to modify a sentence. (D.I. 13, Del. Super. Ct. Dkt. For IN98011102R2 at entry #50) Petitioner then filed a second Rule 61 motion on May 13, 2004, arguing that his robbery

conviction should be set aside because, pursuant to the Delaware Supreme Court's 2003 decision, Walton v. State, 821 A.2d 871 (Del. 2003), there was insufficient evidence to show that he had displayed what appeared to be a deadly weapon. After noting that petitioner's second Rule 61 motion was time-barred under Rule 61(i)(1), the Superior Court analyzed his claim under Rule 61(i)(5). Specifically, the Superior Court considered whether to affirm a right recognized for the first time after petitioner's direct appeal in Walton and vacate his conviction for first degree robbery. The Superior Court denied petitioner's second Rule 61 motion after determining that his claim failed to demonstrate a miscarriage of justice as required by Rule 61(i)(5). State v. Smith, 2004 WL 1551513 (Del. Super. Ct. June 28, 2004). The Delaware Supreme Court affirmed that judgment, holding that the Superior Court did not err in concluding that the petitioner's Rule 61 motion was time-barred. Smith v. State, 2004 WL 2154301 (Del. Sept. 21, 2004).

Petitioner's pending federal habeas application is dated April 30, 2005 and asserts four claims for relief: (1) the Delaware state courts erred in refusing to reverse his 1999 conviction for first degree robbery because, pursuant to the Delaware Supreme Court's new definition of the element "displays" provided in its 2003 holding in Walton v. State, 821 A.2d 871 (Del. 2003), there was insufficient evidence to sustain his

conviction; (2) if petitioner's first degree robbery conviction cannot stand under Walton, then he also cannot be convicted of second degree burglary; (3) the store surveillance tape should not have been admitted into evidence because it was irrelevant; and (4) the Superior Court violated the ex post facto clause by reviewing his second Rule 61 motion under the amended 2003 version of the first degree robbery statute. (D.I. 2, at 5-19)

In its answer, the State asks the court to dismiss petitioner's first two claims as untimely, and claims three and four as alleging issues that are not cognizable on federal habeas review. (D.I. 11) Petitioner filed a response, arguing that the application should be deemed timely under the doctrines of statutory and equitable tolling. Petitioner's response also challenges the State's arguments on the merits. (D.I. 15)

### III. DISCUSSION

A federal court does not have jurisdiction to provide habeas relief unless a petitioner alleges that his conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Consequently, claims asserting a violation of a state law, or challenging a state court's interpretation of state law, are not cognizable on federal habeas review, even if they are couched in terms of due process. Estelle v. McGuire, 502 U.S. 62, 67-8 (1991); Mullaney v. Wilbur, 421 U.S. 684, 691 (1975); Johnson v. Rosemeyer, 117 F.3d 104, 109 (3d Cir. 1997);

Dorn v. Kearney, 1997 WL 811565, at *2 (D. Del. Dec. 10, 1997).

### A. Claims One and Two

The State summarizes claims one and two as arguing "that there was insufficient evidence to convict [petitioner] of first degree robbery, and, anticipating success on this claim, that there was insufficient evidence to support a conviction for the lesser-included offense of second degree burglary." (D.I. 11 at 3) Construing the claims in this manner, the State argues that claims one and two are time-barred because petitioner filed his habeas application after the expiration of the one-year federal habeas limitations period. However, after carefully reviewing petitioner's supporting memorandum, the court concludes that claims one and two are more appropriately characterized as challenging the Delaware courts' failure to retroactively apply a state court decision on collateral review. For example, in claim one, petitioner argues that the Delaware state courts erroneously refused to reverse his 1999 conviction for first degree robbery on the basis of the Delaware Supreme Court's decision in Walton v. State, 821 A.2d 871 (Del. 2003). More specifically, he contends that there is insufficient evidence to support his conviction because putting his hand in his pocket and saying "back off" does not constitute a "display" of a deadly weapon under Walton and, therefore, the conduct for which he was convicted was not criminal in 1999. (D.I. 2) In claim two,

6

petitioner argues that, once the court decides claim one in petitioner's favor, his conviction should be reversed and not just merely reduced to second degree burglary.

Although petitioner presents these issues as two separate claims, they are actually parts of one claim, and the court will treat them as such. The precise issue before the court, then, is whether the Delaware courts' failure to apply Walton retroactively in petitioner's state collateral proceeding and reverse his 1999 conviction warrants federal habeas relief. For the reasons discussed below, the court concludes that this issue presents a state law claim that is not cognizable on federal habeas review.

In Fiore v. White, 531 U.S. 225 (2001), the Supreme Court held that the Due Process Clause of the Constitution required a state to retroactively apply to a defendant's case on collateral review a state court decision that clarified the meaning of the criminal statute under which the defendant was convicted, making the conduct of conviction no longer prohibited.[1] Fiore, 531 U.S.

---

[1] The defendant in Fiore was convicted under a Pennsylvania criminal statute. After the defendant's conviction, the Pennsylvania Supreme Court interpreted the statute for the first time in such a way that indicated the defendant's conduct was not within the statute's scope. During the defendant's collateral proceedings, however, the Pennsylvania courts refused to examine the defendant's case because it was time-barred. The federal district court granted habeas relief, but the Third Circuit Court of Appeals reversed on the basis that state courts are under no constitutional obligation to apply their decisions retroactively. See Fiore v. White, 531 U.S. 225, 226, 227 (2001). The United

7

at 226-28; see also Bunkley v. Florida, 538 U.S. 835, 841 (2003). The Fiore holding is based on the principle that "the Due Process Clause . . . forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt." Fiore, 531 U.S. at 228.

In contrast, the United States Supreme Court has not interpreted the Constitution as requiring states to apply state court decisions announcing new rules of law retroactively to cases on collateral review. See American Trucking Association, Inc., 496 U.S. 167, 177 (1990)("When questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions."); Wainwright v. Stone, 414 U.S. 21, 23-4 (1973). Emphasizing the United

---

States Supreme Court granted certiorari "in part to decide when, or whether, the Federal Due Process Clause requires a State to apply a new interpretation of a state criminal statute retroactively to cases on collateral review." Id. at 226. However, before reaching the merits of the question, the Supreme Court concluded that it needed to know if the relevant state court decision announced a new rule or merely clarified the statute. In response to a certified question, the Pennsylvania Supreme Court explained that its decision "did not announce a new rule of law," but "merely clarified the plain language of the statute" and furnished a "proper statement of law" in Pennsylvania at the time of the defendant's conviction. Id. at 228. Consequently, the Supreme Court concluded that the case did not involve the retroactivity of new state rules. The Supreme Court then proceeded to reverse the Third Circuit's decision after determining that the defendant's conviction and continued incarceration violated due process because the conviction was based on conduct that was not prohibited under the clarified meaning attributed to the state statute. See generally Fiore, 531 U.S. 225.

8

Supreme Court's "longstanding position that the federal constitution has no voice upon the subject of retroactivity," the Third Circuit "has refused to require application of new state decisions in habeas proceedings," and continues to follow that rule even after Fiore. Warren v. Kyler, 422 F.3d 132, 136-37 (3d Cir. 2005)(citing Great Norther Ry. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 364 (1932)). In fact, the Third Circuit views Fiore as underscoring the important distinction between "a state decision [that has] established a new rule of law [and a decision that] merely clarified existing state law." Warren, 422 F.3d at 137. Whether or not a state court decision announces a new rule or clarifies existing state law is a determination to be made by the state courts, not the federal courts, and when the state court decision announces a new rule of law, the "Estelle v. McGuire principle requires [federal courts to] heed the state court's application of its own retroactivity principles." Warren, 422 F.3d at 137; see Fiore, 531 U.S. at 226-28.

The version of the first degree robbery statute in effect at the time of petitioner's conviction provided, in relevant part, that:

> (a) A person is guilty of robbery in the first degree when the person commits the crime of robbery in the second

9

degree[2] and when, in the course of the commission of the crime or of immediate flight therefrom, the person or another participant in the crime:
  (2) Displays what appears to be a deadly weapon.

Del. Code Ann. tit. 11, § 832(a)(2)(1999). From 1975[3] until the Walton decision in 2003,

> Delaware courts had attributed the word "displays" to denote, not only the notion of spreading before view or exhibiting to the sight, but also to represent that which is manifested to any of a victim's senses. . . . The "displays" requirement could be predicated only on the victim's belief that defendant possessed a deadly weapon, and some objective manifestation of a weapon, even if the weapon was unseen. In almost every case, the objective manifestation was in the form of a defendant alleging to have a weapon while concealing his or her hand under a piece of clothing.

Smith, 2004 WL 1551513, at *4-6.

However, in Walton, the Delaware Supreme Court reversed a first degree robbery conviction after determining that the

---

[2] The second degree robbery statute in effect in 1999 provided that a "person is guilty of robbery in the second degree when, in the course of committing theft, the person use[d] or threaten[ed] the immediate use of force upon another person with intent to (1) prevent or overcome resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compel the owner of the property or another person to deliver the property or to engage in other conduct which aids in the commission of the theft." Del. Code Ann. tit. 11, § 831(a)(1999).

[3] The Delaware Supreme Court decided State v. Smallwood, 346 A.2d 164, 166-67 (Del. 1975) in 1975, holding that the term "displays" "includes not only the notion of spreading before view or exhibiting to the sight, but also that which is manifested to any of a victim's senses." The Smallwood court determined that "§ 832(2) reaches not only the robber who exposes a deadly weapon to the view of his victim, but also the robber who intimidates by otherwise manifesting the presence of such a weapon even though it is not seen by the victim." Id. at 167.

robber's hand in his pocket did not satisfy the "displays a deadly weapon" element of first degree robbery. Walton, 821 A.2d at 873-74. During the course of a bank robbery, the defendant kept one hand in his pocket while handing a note to a teller stating that he had a bomb. In rejecting the State's argument that "Walton's handing over the note and having his hand in his pocket constituted a sufficient basis for a rational jury to conclude beyond a reasonable doubt that this conduct satisfied the element of a 'display' of 'what appeared to be a deadly weapon,'" the Walton court opined:

> First, this conduct cannot be construed as a "display." Second, the hand in the pocket cannot lead to a permissible inference of an "appearance" of a deadly weapon. The solitary reference to Walton's hand in his pocket is not an objective physical manifestation that Walton displayed what appeared to be a bomb. The State asks us to apply the objective manifestation analysis to give "display" a limitless reading that would effectively permit a first degree robbery conviction to stand even if the defendant displays nothing at all. The State did not present evidence to prove beyond a reasonable doubt that Walton supported his threat "I have a bomb," with accompanying physical conduct that could be viewed objectively as "displaying what appears to be a deadly weapon." The sole evidence presented to describe Walton's conduct consisted of Detective Richardson's notes in which [the teller] mentioned that the suspect "had his hand in his pocket which scared" [the teller]. Richardson testified that [the teller's] statement was a response to the question, "Did the suspect have any weapons?" His notes merely reveal that [the teller] did not see a weapon or anything that appeared to be a weapon, only that Walton had his hand in his pocket. This statement, without more, does not even suggest that Walton made a gesture toward a bulge or other object on his person that "appeared to be a deadly weapon."

Id. at 875-76. On June 30, 2003, in response to Walton, the

11

Delaware General Assembly amended Del. Code Ann. tit. 11, § 832(a)(2) "by striking the phrase 'deadly weapon' and inserting the phrase 'deadly weapon or represents by word or conduct that he or she is in possession or control of a deadly weapon.'" Smith, 2004 WL 1551513 at *4-6.

In petitioner's case, the Delaware Superior Court viewed Walton as announcing a new rule[4] that existed from April 25, 2003, the date on which the Delaware Supreme Court decided Walton, until June 30, 2003, the date on which the Delaware General Assembly amended Del. Code Ann. tit. 11, § 832(a)(2). Smith, 2004 WL 1551513 at *4-6 (explaining that "[a]ny right that may have burgeoned from the Walton decision, was extinguished by the enactment of § 832(a)(2), as amended."). According to the Superior Court, defendants could only benefit from the Walton rule if they pursued relief "within that narrow ambit of time commencing [on April 25, 2003] with the holding in Walton, and terminating [on June 30, 2003] with the amendment of §

---

[4]For example, when the Delaware Superior Court denied petitioner's claim alleging insufficient evidence to sustain his conviction under Walton, the Superior Court referred to Walton as "the Delaware Supreme Court's 2003 **revisionary** interpretation applied to the 'displays' of 'what appears to be a deadly weapon' text of 11 Del. C. § 832(a)." Smith, 2004 WL 1551513, at *4 (emphasis added). The Superior Court also explained that, "[i]n Walton, the Court **reversed** twenty-five years of legal precedent by **redefining** the 'displays . . . requirement'." Id. at *5 (emphasis added). The terms "revisionary," "reversed," and "redefining" indicate that the state court viewed Walton as completely changing the meaning of the term "displays," and not just clarifying the term.

832(a)(2)." Id. at *5, *8.

Here, the Superior Court refused to retroactively apply Walton to petitioner's conviction because petitioner did not file his Rule 61 motion raising the Walton argument until April 30, 2004. The Delaware Supreme Court affirmed that decision, noting that the Rule 61 motion was time-barred and petitioner's Walton argument failed to overcome that procedural bar. As aptly explained by the Third Circuit:

> On habeas review we are in no position to second-guess the state courts' determination as to [the] state law issue [of its own established retroactivity doctrines]. We must rather review for a potential violation of federal law, and because we conclude that nothing in the Constitution requires states to apply their own decisions retroactively, we find no such violation.

Warren, 422 F.3d at 137. Accordingly, the court will dismiss claims one and two because they fail to present a violation of federal or constitutional law cognizable on federal habeas review.[5]

---

[5] If, for some reason, the court is incorrect in its conclusion that the Delaware courts viewed Walton as announcing a new rule, and Walton merely clarified the first degree robbery statute, then "the pertinent question under Fiore is not whether the law has changed" but, rather, what the state of the law was at the time of the defendant's conviction. Bunkley v. Florida, 538 U.S. 835, 840 (2003).
 Even in this alternate scenario, the court concludes that habeas relief is not warranted in petitioner's case because the Delaware court decisions denying him relief were neither contrary to, nor an unreasonable application of, clearly settled Supreme Court precedent. See 28 U.S.C. § 2254(d)(1). As explained in the text of the opinion, Fiore provides the applicable Supreme Court precedent, and a conviction violates due process if, at the time it was rendered, the activity for which the defendant was

13

## B. Claim Three

In claim three, petitioner contends that the Superior Court erroneously admitted a store surveillance video as evidence in his trial, which only alleges an error of state evidentiary law. Accordingly, the court will dismiss claim three because it does not present an issue cognizable on federal habeas review.

Further, even if claim three presents a cognizable habeas claim, it is time-barred. See Fielder v. Varner, 379 F.3d 113, 118 (3d Cir. 2004)(holding that individual claims within a habeas application may be reviewed separately for timeliness). The Delaware Supreme Court affirmed petitioner's conviction and sentence on December 7, 1998, and he did not petition for certiorari review. Therefore, the limitations period began to run on December 7, 1999 and, to be timely, petitioner had to file claim three by December 6, 2000. 28 U.S.C. § 2244(d)(1)(A); See

---

convicted was not a crime. Applying Walton's interpretation of the displays element to petitioner's conduct, the court concludes that petitioner still would have been convicted of first degree robbery. In Walton, the Delaware Supreme Court held that the "objective manifestation" prong of the "displays" element is not satisfied if the defendant merely has his hand in his pocket; at the least, the defendant must make some sort of gesture toward something on his body that appeared to be a deadly weapon. Walton, 821 A.2d at 875-76. In the instant case, petitioner put his right hand inside his jacket as if he were going to get something, turned, and said "back off." That action involved more than the passive placement of a hand inside a pocket and, therefore, provided an objective manifestation of a weapon sufficient to satisfy the Walton test. Thus, the Delaware courts' denial of relief was neither contrary to, nor an unreasonable application of, Fiore.

14

Kapral v. United States, 166 F.3d 565, 575, 578 (3d Cir. 1999); Jones v. Morton, 195 F.3d 153, 158 (3d Cir. 1999); Wilson v. Beard, 426 F.3d 653 (3d Cir. 2005)(holding that Federal Rule of Civil Procedure 6(a) and (e) applies to federal habeas petitions).

Petitioner waited until April 30, 2005 to file his application,[6] which is approximately four-and-one-half years too late. Although the statute of limitations may be tolled during the pendency of a properly filed application for State post-conviction or other collateral review pursuant to 28 U.S.C. § 2244(d)(2), statutory tolling does not render claim three timely. Petitioner's properly filed first Rule 61 motion statutorily tolls the limitations period from the date it was filed, June 14, 2000, through December 20, 2000, the date on which the Delaware Supreme Court affirmed the Superior Court's denial of the motion. However, 160 days of the limitations period had already expired when petitioner filed the Rule 61 motion. The limitations period resumed on December 21, 2000, and ran for the remaining 205 days

---

[6]Pursuant to the prison mailbox rule, a pro se prisoner's habeas application is deemed filed on the date he delivers it to prison officials for mailing to the district court, not on the date the application is filed in the court. See Longenette v. Krusing, 322 F.3d 758, 761 (3d Cir. 2003); Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998); Woods v. Kearney, 215 F.Supp.2d 458, 460 (D. Del. 2002)(date on petition is presumptive date of mailing, and thus, of filing). Petitioner's application is dated April 30, 2005 and, presumably, he could not have delivered it to prison officials for mailing any earlier than that date.

without interruption until it expired on July 13, 2001.[7] Petitioner filed a motion for modification of sentence in April 2004, and also a second Rule 61 motion on May 13, 2004, but neither of the motions toll the limitations period because they were filed well after the limitations period expired in 2001.

AEDPA's limitations period may also be tolled for equitable reasons if the petitioner's case is "the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999). In order to trigger equitable tolling, the petitioner must demonstrate that he "exercised reasonable diligence in investigating and bringing [the] claims" and that he was prevented from asserting his rights in some extraordinary way; mere excusable neglect is insufficient. Miller v. New Jersey State Dept. of Corrs., 145 F.3d 616, 618-19 (3d Cir. 1998); Schlueter v. Varner, 384 F.3d 69, 77 (3d Cir. 2004).

---

[7] The record reveals that the Delaware Supreme Court issued a mandate regarding its affirmance on January 19, 2001. There is authority to the effect that a state post-conviction proceeding is pending for the purposes of § 2244(d)(2) until the date on which the court of appeals issues a mandate, provided that the state courts view the issuance of an appellate mandate as determining the date of finality, as opposed to the issuance of an appellate decision. See, e.g., Payne v. Kemna, - F.3d -, 2006 WL 668227, at *1-2 (8th Cir. Mar. 17, 2006); Nyland v. Moore, 216 F.3d 1264, 1267 (11th Cir. 2000). Here, however, claim three is time-barred by more than the thirty day difference at issue. Therefore, even if the court were to view January 19, 2001 as the date on which the first Rule 61 motion finished pending for statutory tolling purposes, the court would still deny claim three as time-barred.

In petitioner's case, the court concludes that equitable tolling is not warranted because petitioner has not demonstrated any extraordinary circumstance that prevented him from timely filing his habeas application. To the extent petitioner made a mistake or miscalculation regarding the one-year filing period, such mistakes do not warrant equitably tolling the limitations period. See Simpson v. Snyder, 2002 WL 1000094, at *3 (D. Del. May 14, 2002).

Accordingly, the court will dismiss claim three for failing to state a claim for federal habeas relief, and alternatively, as time-barred.

### C. Claim Four

In claim four, petitioner contends that the Superior Court violated the ex post facto clause by reviewing his second Rule 61 motion under the first degree robbery statute as amended in June 2003. Once again, the court concludes that this claim alleges a state law claim that is not cognizable on federal habeas relief because petitioner's ultimate criticism is with the Superior Court's analysis in a collateral proceeding. See Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998)(holding that the "federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's **collateral** proceeding does not

17

enter into the habeas proceeding.")(emphasis in original); see also Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir. 2004)("alleged errors in [state] collateral proceedings . . . are not a proper basis for habeas relief"). Additionally, although the Superior Court did analyze petitioner's conviction under the 2003 amendment to the first degree robbery statute, the Superior Court also explicitly held that petitioner's conviction was proper under the terms of the first degree robbery statute in effect at the time of his conviction.

Accordingly, the court will dismiss claim four because it fails to warrant federal habeas relief.

### D. Motion for an Evidentiary Hearing and Representation by Counsel

Petitioner filed a motion requesting an evidentiary hearing and representation by counsel. (D.I. 16) The court has concluded that it must dismiss petitioner's entire habeas application. Therefore, the court will deny the motion as moot.

### IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. See Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional

18

claims debatable or wrong." 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. <u>Id.</u> "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." <u>Id.</u>

The court finds that petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

**V. CONCLUSION**

For the reasons stated, petitioner's application for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.